UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ADRIANNE OLIVER, ET AL.                    CIVIL ACTION

VERSUS                                     NO. 06-5737

PHARMACIA & UPJOHN COMPANY, LLC            SECTION B(2)

ORDER AND REASONS

Before the Court is Plaintiff Adrianne Oliver's Motion for Reconsideration of April 30, 2008 Court Order (Rec. Doc. No. 39).

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration of Order (Rec. Doc. No. 39) is **GRANTED**, to review Plaintiff's late opposition to summary judgment, but **the Order granting summary judgment (Rec. Doc. No. 31) WITHSTANDS** after review for the following reasons.

DISCUSSION

**I. Plaintiff's Justifiable Neglect pursuant to Fed. R. Civ. P. 60(b)**

The issue before the Court is whether Petitioner can be granted relief from adverse summary judgment on the basis of Fed. R. Civ. P. 60(b). Rule 60(b)(1) permits relief from a judgment or order on the grounds of mistake, inadvertance, surprise, or neglect. *Fed. R. Civ. P. 60(b)(1)*. Rule 60(b)(6) is a catch-all provision that provides post-trial relief for "any other reason that justifies relief." *Fed . R. Civ. P. 60(b)(6)*. The provisions, however, are mutually exclusive. *Broussard v. Johnson*, 254 F.3d 71 (5th Cir. 2001). If a party is partly to blame for the

delay and the motion for post-trial relief is brought within one year, Rule 60(b)(1) is applied; if a party is prevented from complying with a deadline due to an act of God or some other extreme circumstance, then Rule 60(b)(6) is used. *Id.* As such, this Court should apply Rule 60(b)(1), allowing for justifiable neglect on the grounds of mistake, inadvertence, surprise, or neglect because Plaintiff blames her lawyer's carelessness and oversight for the failure to timely file.

The Fifth Circuit has held that, in order to merit relief under Rule 60(b), a party must show that its failure to file a timely answer (1) resulted from justifiable neglect and (2) that a fair probability of success on the merits of the case exists if judgment were set aside. *Fed. Sav. and Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1069 (5th Cir. 1988). Courts generally consider eight factors when deciding whether or not to set aside default judgments pursuant to Rule 60(b)(1):

> (1) final judgments should not be lightly disturbed; (2) a Rule 60(b) motion is not to be used as a substitute for appeal; (3) the rule should be liberally construed to achieve substantial justice; (4) whether the motion was filed within a reasonable time; (5) whether-if the judgment was one a default or a dismissal in which there was no consideration of the merits-the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether-if the judgment was rendered after a trial on the merits-the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Crutcher v. Aetna Life Ins.*, 746 F.2d 1076, 1082 (5th Cir. 1984). In determining whether the moving party has established "excusable neglect" under Rule 60(b)(1) ("mistake, inadvertance, surprise, or neglect"), the district court enjoys considerable discretion. *See Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) (rev'd on other grounds).

The Fifth Circuit has made few exceptions with regards to excusing the carelessness or neglect of a petitioner's attorney. *See Lavespere,* 910 F.2d at 173 (rev'd on other grounds); *see also Nauls v. Clorox Co.*, 55 F.3d 633 (5th Cir. 1995); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632 (5th Cir. 2005).   In *Mortland v. Startran, Inc.*, the plaintiff's attorney blamed her failure to timely file an opposition to summary judgment on her paraglegal's oversight and on the fact that she was relocating her office. *Mortland v. Startran, Inc.*, 204 F.3d 1114, 1999 WL 1328022 (5th Cir. 1999), at *1.   The Fifth Circuit upheld the district court's denial of the motion, affirming that "[t]he negligence or carelessness of a client's lawyer, such as missing deadlines, does not constitute excusable neglect under Rule 60(b)." *Id.; see also Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 357 (5th. Cir. 1993) ("Gross carelessness, ignorance of the rules, or ignorance of the law are not acceptable excuses for Rule 60(b) relief.").   In addition, this Court held in *A&D Partnership v. The Equity Group,*

*Inc.*, 1988 WL 137497 (E.D. La. Dec. 22, 1988), that "[t]he failure of plaintiff's counsel to file an opposition because of a court appearance that commenced almost three weeks after the original motions were filed is not a sufficient basis on which this Court should vacate the summary judgments...that were granted." *Id.* at *2. The Court reiterated its disfavor of reconsideration: "[t]he federal judiciary has consistently held that it is perilous for the party against whom summary judgment is sought not to come forward to offer some opposition. *Id.* at *1.

The few exceptions to the aforementioned cases carved out by the courts usually involve unintentional conduct by a plaintiff's attorney. In *Blois v. Friday,* the Fifth Circuit vacated the summary judgment order in favor of defendants and granted the plaintiff's 60(b) motion for relief. 612 F.2d 938 (5th Cir. 1980). This case involved the unintentional neglect of the plaintiff's attorney to file a change of address with the court, resulting in a lack of response to a motion for summary judgment by the plaintiffs. *Id.* at 940. The court held that a party should not be punished for its attorney's mistake absent "a clear record of delay, willful contempt, or contumacious conduct." *Id.* This is a double edged sword, however, as the Fifth Circuit stated:  "The greater the negligence involved, or the more willful the conduct, the less 'excusable' it is; on the other hand, the more inexcusable it is, the greater the natural sympathy the court has with the

client." *Crutcher,* 746 F.2d at 1083.

In this case, Ms. Oliver's attorney has blamed her failure to timely file an opposition to summary judgment on the fact that she had been bombarded with massive discovery in this case, thus resulting in her overlooking the hearing notice attached to the plaintiff's Motion for Summary Judgment.   (Rec. Doc. 34). Specifically, Plaintiff points out that the notice was page 152 of 153 pages of the Motion for Summary Judgment. (Rec. Doc. 34).  In addition, Plaintiff's attorney claims that she was overworked as a result of bringing both this lawsuit and an identical suit on behalf of Plaintiff's mother in Florida. (Rec. Doc. 34).  The case law is overwhelmingly in favor of the Defendant, and the factors laid out by the Fifth Circuit further discredit Plaintiff's claim that her attorney's neglect was justifiable.

*(1) Final judgments should not be lightly disturbed.*

As this Court has granted default summary judgment in this case, a final judgment has been rendered. (Rec. Doc. 31)  This factor weighs in favor of the Defendant, who has already been granted a judgment in its favor. (Rec. Doc. 31)

*(2) A rule 60(b) motion is not to be used as a substitute for appeal.*

There is no evidence here to suggest that Plaintiff seeks to appeal her judgment with this motion.  The appeals process is still available to this Plaintiff. Regardless, the two-pronged test this

Court will apply pursuant to Rule 60(b) includes a consideration of the merits of Plaintiff's case. *See Kroenke*, 858 F.2d 1067 (5th Cir. 1988). This factor weighs in favor of the Defendant because Plaintiff can appeal any order for summary judgment handed down by this Court.

*(3) The rule should be construed liberally to achieve substantial justice.*

Rule 60(b)(1) provides relief on the following grounds: mistake, inadvertence, surprise, and neglect. *Fed. R. Civ. P. 60(b)(1)*. This Court will consider all evidence in the light most favorable to Plaintiff, including the consideration that Plaintiff should not suffer for her attorney's professional shortcomings. *See Blois*, 612 F.2d 938 (5th Cir. 1980); *see also Seven Elves, Inc., v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981) ("the rule [60b] is applied most liberally to judgements in default"). The missed deadline in the present case was due entirely to the fault of Plaintiff's attorney. Plaintiff's attorney blames her own work overload and oversight for her lack of notice concerning the hearing date. (Rec. Doc. 31). While Plaintiff does place some responsibility for the multitude of discovery documents on the Defendant ("not all were relevant, and not all were easily searched"), the bulk of the blame should be attributed to the attorney's negligence. Thus, while such negligence may not be excusable for the purposes of 60(b)'s "excusable neglect" standard,

one can naturally sympathize with Plaintiff.  *See Crutcher*, 746 F.2d at 1083.  Construed liberally, this factor weighs in favor of Plaintiff, who in this case should not be held responsible for her attorney's neglect.  *See Blois*, 612 F.2d at 940.

*(4) Whether the motion was filed within a reasonable time*

Plaintiff filed her Motion for Reconsideration thirty-one (31) days after the Order for summary judgment was granted.  The Order granting summary judgment explicitly states that the Plaintiff must file a motion for reconsideration within thirty (30) days of the order grating summary judgment.  (Rec. Doc. 31).  Thus, Plaintiff has failed to timely file her motion for reconsideration.  (Rec. Doc. 39).  The docket reflects that Plaintiff did attempt to timely file her Motion, but it was rejected as deficient by the Court.  (Rec. Docs. 33-37).

*(5) Whether-if the judgment was one a default or a dismissal in which there was no consideration of the merits-the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense.*

In the present situation, this Court has granted an Order for Summary Judgment in favor of Defendant without hearing the merits of the case.  (Rec. Doc. 31).  The Fifth Circuit has held that "case law allows for more leniency in opening up default judgments, not those in which the court has had a chance to evaluate the merits."  *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 471 (5th Cir. 1998).  Additionally, "where denial of relief [under

Rule 60(b)] precludes examination of the full merits of the cause, even a slight abuse of discretion may justify reversal." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981). Thus, the case law suggests that this Court should allow wide discretion in allowing Plaintiff to have her day in court. However, the final part of this factor should not be casually overlooked. As Rule 60(b) includes a two-pronged test, the second of which requires an analysis of the plaintiff's claim on the merits, this factor will appropriately be taken into consideration in conjunction with the second part of the test. *Fed. R. Civ. P. 60(b).*

*(6) Whether-if the judgment was rendered after a trial on the merits-the movant had a fair opportunity to present his claim or defense*

In this case, there was no trial on the merits, so this factor is inapplicable.

*(7) Whether there are intervening equities that would make it inequitable to grant relief*

Defendant has not demonstrated that it would be prejudiced by the granting of post-trial relief to Plaintiff. *See Easley*, 1999 WL 649632 at *3 (finding in that case "that the interests of justice militate in favor of relief ....Defendant offers no support for its argument that it will be prejudiced if the court grants relief"). Defendant does not mention any potential prejudice or inequity that would arise should the Court rule against on this motion. Accordingly, no apparent inequities would result from

-8-

granting the Plaintiff relief in this case.

*(8) Any other factor that is relevant to the justice of the judgment under attack, bearing in mind that final judgments serve as a useful purpose to the courts, society, and the litigants.*

With regards to this factor, the Fifth Circuit made a valid and important point in *Pryor v. United Stats Postal Serv.*: "

> Were this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear.

769 F.2d 281, 288-89 (5th Cir. 1985).  Thus, the Court must balance the importance of judicial economy and efficiency with Plaintiff's right to present a fair argument on her motion.

A full consideration of these factors favors Defendant in this case.  As the Fifth Circuit summarized in *Crutcher* when rejecting the plaintiff's Rule 60(b) motion: "[t]he neglect of the attorney is to be treated as the neglect of the party."  746 F.2d 1076, 1083 (*citing Link v. Wabash R.R.*, 370 U.S. 626 (1962).  The court stressed the fact that the plaintiff's attorney was freely chosen and the plaintiff cannot avoid the consequences of the acts and omissions of his lawyer.  *Id.*  "This voluntary choice is at the heart of our representative litigation process.  Were it to be otherwise, endless delay would result...."  *Id.* at 1082.  Thus, since Plaintiff Adrianne Oliver freely chose her lawyer, she will have to live with her lawyer's deficiencies.  *See Crutcher,* 746

-9-

F.2d at 1083.  Since Plaintiff's lawyer did not file the motion for reconsideration in a timely fashion nor provide a valid or reasonable excuse as to why she failed to know about the hearing date, the attorney's neglect is inexcusable.

**II. Petitioner's probability of success on the merits of the case**

While Plaintiff Oliver has not demonstrated excusable neglect under the Rule 60(b) standard, this Court should still take into account the validity of her claims.  Since this case has not been decided on the merits but instead judgment granted in default, Rule 60(b) should be construed liberally to ensure that the scales of justice and equity have been appropriately balanced.  *See Seven Elves, Inc.,* 635 F.2d at 401 ("the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause.").  Accordingly, a brief summary and analysis of Plaintiff's claims and their probability of success is appropriate here.

*A. Plaintiff's Claims of Negligence and Breach of Express and Implied Warranty*

In her complaint, Plaintiff claims that Defendant Pharmacia & Upjohn failed to exercise reasonable care in the manufacture and marketing of Depo-Provera.  (Rec. Doc. 1).  Additionally, Plaintiff claims that, according to the provisions set forth in Louisiana Civil Code 2520 et. seq., Defendant breached its express and

implied warranties that Depo-Provera was a safe and effective birth control treatment.  (Rec. Doc. 1).  Defendant, in its Motion for Summary Judgment, claims that these theories of recovery are barred by the Louisiana Products Liability Act ("LPLA").  (Rec. Doc. 22).

The LPLA provides an exclusive remedy for Plaintiffs seeking to recover from a manufacturer for damage caused by a product. *LSA-R.S. §9:2800.52.*  Courts have routinely dismissed negligence and breach of warranty claims brought in conjunction with claims under the LPLA.  *See Jefferson v. Lead Indus.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (rejecting Plaintiff's negligence and breach of express and implied warranty claims due to the exclusivity of the LPLA); *see also Maurice v. Eli Lilly & Co.*, 2005 WL 3542902 (E.D. La. Nov. 7, 2005) (dismissing plaintiff's non-LPLA claims of negligence, fraud, and misrepresentation against manufacturer-pharmaceutical company).

Here, Plaintiff has asserted claims of negligence, breach of express warranty, and breach of implied warranty as well as LPLA claims.  (Rec. Doc. 1).  Thus, as the precedent firmly demands, these claims must be dismissed as inconsistent with the exclusive remedy provisions of the LPLA.  *LSA-R.S. §9:2800.52.*[1]

_____

[1] Plaintiff does not contest this point in her Opposition to Summary Judgment memorandum.  (Rec. Doc. 38).

B. *Plaintiff's LPLA Claim of Inadequate Warning*

Plaintiff claims that, due to Defendant's failure to adequately warn on the product label of the potential side effects of Depo-Provera use, Plaintiff has suffered osteopenia and bone density loss. (Rec. Doc. 1). Specifically, Plaintiff challenges the label in effect from 1995-November 17, 2004. (Rec. Doc. 38).[2] Plaintiff alleges that the warning labels should have mentioned Depo-Provera not only as a risk factor but as a cause of osteopenia, as well as the fact that bone density should be monitored closely while a patient is taking Depo-Provera. (Rec. Doc. 38). While the Plaintiff in her original complaint challenged the adequacy of the warning with no time restrictions, Plaintiff amended the contested material facts in her Opposition to Summary Judgment to include only the label in effect pre-November 17, 2004.

---

[2]The warning in effect from 1995-November 17, 2004, reads as follows: "Bone mineral density changes: use of Depo Provera Contraceptive Injection may be considered among the risk factors for development of osteoporosis. The rate of bone loss is greatest in the early years of use and then subsequently approaches the normal age related fall." A black box warning was later added by the Defendant manufacturer in November of 2004 after a post-clinical trial on bone mineral density. This warning reads as follows: "Women who use Depo-Provera Contraceptive Injection may lose significant bone mineral density. Bone loss is greater with increasing duration of use and may not be completely reversed. It is unknown if use of Depo-Provera Contraceptive Injection during adolescence or early adulthood, a critical period of bone accretion, will reduce peak bone mass and increase the risk of osteoporotic fracture in later life. Depo-Provera Contraceptive Injection should be used as a long-term birth control method (e.g. longer than 2 years) only if other birth control methods are inadequate."

In response, Defendant claims that the warning labels were adequate according to the "learned intermediary" doctrine espoused by the Fifth Circuit in *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 268 (5th Cir. 2002).  Alternatively, Defendant claims that since Plaintiff does not challenge the adequacy of the post-2004 warning labels, plaintiff can not claim that information lacking in the post-2004 warning label would have made the pre-2004 warning label adequate.  (Rec. Doc. 44).

In prescription drug cases brought under the LPLA, the person to whom the adequate warning must be given is not the patient but the prescribing physician.  *See Willett v. Baxter Int'l, Inc.* 929 F.2d 1094, 1098 (5th Cir. 1991); *see also Anderson v. McNeilab, Inc.,* 831 F.2d 92, 93 (5th Cir. 1987) (per curiam).  This "learned intermediary" doctrine discharges a drug company's duty to warn a patient if the warning to the prescribing physician is sufficient to reasonably inform that physician of the dangers associated with the drug.  *See Anderson*, 831 F.2d at 93 (*citing Cobb v. Syntex Labs., Inc.,* 444 So.2d 203, 205 (La. Ct. App. 1983)).  A drug package insert will be considered adequate as a matter of law only if it "clearly and unambiguously" warns of the potential adverse effect and the plaintiff's physician testifies that the warning adequately informed him or her of the risks associated with the drug.  *Stahl,* 283 F.3d at 268.

-13-

In *Stahl*, the Fifth Circuit upheld a Louisiana line of jurisprudence that required more than a prima facie allegation by the plaintiff to make an inadequate warning claim. *Stahl*, 283 F.3d at 264-65.  The plaintiff must allege specific facts that demonstrate a genuine issue of material fact.  *Id.*  In *Stahl*, the plaintiff alleged that the package insert which contained the warning failed to alert his physician of the risk of liver dysfunction and cholestatic hepatitis because it failed to point out the fact that use of the drug could cause the plaintiff's injuries, in this case liver failure  *Id.* at 266.  The Fifth Circuit sided with the drug company, reasoning that since a prescribing physician would know that liver failure is a possible result of cholestatic hepatitis (which was listed as a potential side effect in the package insert), this injury fell within the "obvious risks" of the drug's use.  *Id.*

In the present case, Plaintiff Oliver is analogous to the plaintiff in *Stahl* who alleged that the drug company failed to warn of potential risks when it omitted mention of a potential causal relationship between the drug's use and the plaintiff's suffered injury.  *See id.* at 266.  Similar to *Stahl*, both of Plaintiff Oliver's prescribing physicians have testified that they were adequately warned of the risks associated with Depo-Provera by the pre-2004 label.  (Rec. Doc. 22).  Additionally, an adequate physician could deduce that osteopenia is an "obvious risk"

associated with osteoporosis. *See Stahl*, 283 F.3d at 266. Moreover, the Depo-Provera warning label contains specific reference to bone mineral density loss as a potential risk factor associated with ingestion of the drug. (Rec. Doc. 22). Thus, since both of Plaintiff Oliver's treating physicians testified that they were adequately warned of the risk of osteoporosis from the Depo-Provera warning label, Pharmacia & Upjohn has properly discharged its duty to warn according to the learned intermediary doctrine. *Id.* at 264-65.[3]

   *C. Causation*

   Plaintiff Oliver alleges that, because of Defendant's inadequate warning, her ingestion of Depo-Provera caused osteopenia and bone density loss. (Rec. Doc 1). Defendant claims (1) lack of proximate causation, that Plaintiff can not show that the alleged failure to warn was the cause of her injury; and (2) lack of actual

---

   [3]Virtually identical litigation was brought in federal court in Florida by Plaintiff's mother, who alleged similar injuries resulting from Depo-Provera use. *See Colville v. Pharmacia & Upjohn Co.*, 2008 WL 2721194, (N.D. Fla. July 10, 2008). The court in *Colville* granted the Defendant's Motion for Summary Judgment, insisting that "[b]ecause Depo-Provera's warnings were accurate, clear and unambiguous...this Court holds that Depo-Provera's warnings were indeed adequate to warn a physician that use of Depo-Provera may lead to osteoporosis." *Colville*, 2008 WL 2721194, at *5-6. *See also* Mandy Foster, *Stahl v. Novartis Pharmaceutical Corp.: Inadequate Warnings and Inadequate Protection Under the Louisiana Products Liability Act*, 77 Tul. L. Rev. 803, 810 (2003) (suggesting that under the LPLA, a court may forego an analysis of the adequacy of label warning if the court does not find the plaintiff's prima facie evidence clear and convincing).

causation, as Plaintiff can not prove that her use of Depo-Provera caused her osteopenia . (Rec. Doc. 22).

To maintain a successful claim under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; *(2) that the claimant's damage was proximately caused by a characteristic of the product;* (3) that this characteristic made the product unreasonably dangerous; and *(4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. La. Rev. Stat. Ann. §9:2800.54(A).* (emphasis added). While both parties concede the first of these four elements, the latter three are contested. (Rec. Docs. 22, 38). The second and fourth elements represent the causation requisites of the Act, while the third element of the statute was addressed *supra* by the Plaintiff's claim of inadequate warning. (Rec. Doc. 1). Thus, in the present case, Plaintiff Oliver must prove that her injury was proximately caused by a characteristic of the product (the allegedly inadequate warning) and that her injury arose from her reasonably anticipated use of the product. *La. Rev. Stat. Ann. §9:2800.54(A).*

In order to prove proximate causation under the LPLA's learned intermediary doctrine, "the plaintiff must show that a proper warning would have changed the decision of the treating physician i.e. that but for the inadequate warning, the treating physician would not have used or prescribed the product. *Willett v. Baxter*

*Int'l, Inc.* 929 F.2d 1094, 1099 (5th Cir. 1991); *see also Ferguson v. Proctor & Gamble Pharmaceuticals, Inc.* 353 F.Supp. 2d 674, 679 (E.D. La. 2004) (finding in that case that because plaintiffs had "not shown that a proper warning would have changed the decision of [plaintiff's] treating physician, [defendant] is entitled to summary judgment on plaintiff's failure to warn claim").

In the present case, both of Plaintiff's treating physicians continued to prescribe Depo-Provera after the November 2004 black box warning. (Rec. Doc. 22). Obviously, this different and more detailed warning had no effect on the Plaintiff's prescribing physicians. (Rec. Doc. 22). In addition, Plaintiff does not challenge the adequacy of the post-2004 warning in her Opposition to Summary Judgment; thus, even were this Court to assume that Plaintiff finds the post-2004 warning inadequate, she offers no proof of its inadequacy. (Rec. Doc. 38). In conclusion, Plaintiff cannot dispute the fact that a proper warning would have changed the prescription decision of her treating physicians. *See Willett*, 929 F.2d at 1099.

In order to prove actual causation under the LPLA, a plaintiff must prove that the manufacturer's product caused damage from the plaintiff's reasonably anticipated use of the product. *La. Rev. Stat. Ann. §9:2800.54(A)*. In prescription drug cases, courts require more than medical testimony concerning the possibility that the ingested drug could be the cause of the plaintiff's injuries.

-17-

*See Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F.Supp.2d 835, 843 (M.D. La. 2006). In *Guidry*, the plaintiff presented expert medical testimony that the prescription drug Arava could have been the cause of his injuries. *Id.* The district court rejected these contentions, stating that the doctor's "equivocal statements are insufficient for a reasonable jury to infer that Arava...was the cause of plaintiff's injuries." *Id.* In addition, an Ohio federal court rejected a plaintiff's Depo Provera products liability claim on the grounds that she was unable to prove causation. *See Lorenzi v. Pfizer Inc.*, 519 F.Supp.2d 742 (N.D. Ohio 2007). In *Lorenzi*, the court reasoned that with no original baseline bone density score to compare with the plaintiff's current bone density score, the plaintiff could not establish the fact that Depo-Provera use caused her lowered bone density. *Id.* at 752 (finding it "impossible to establish causation from one single low BMD (bone mass density) result").

In the present case, Plaintiff presents evidence from two medical experts that Plaintiff Oliver's osteopenia was caused, more probably than not, by her use of Depo Provera. (Rec. Doc. 38). Both experts testified that it was possible that Depo-Provera could have caused her osteopenia and bone density loss. (Rec. Doc. 38) One doctor testified that it was rare for a girl of Plaintiff Oliver's age to have such a low bone density measure. (Rec. Doc.

-18-

38).[4]  This medical testimony proffered by the Plaintiff's experts

is analogous to the testimony offered by the experts in *Guidry*.

418 F.Supp.2d at 843.  The medical testimony offered only states

that Depo-Provera could have been a cause of the Plaintiff's

injuries, without offering further medical evidence of the causal

connection.  (Rec. Doc. 38).  Furthermore, neither medical expert

can make any comparison between Plaintiff's pre- and post- bone

density score.  (Rec. Doc. 22).  Plaintiff's first bone scan was

performed in March 2006.  (Rec. Doc. 22).  No prior bone density

reading is available to compare to this bone density score.  (Rec.

Doc. 22).  Without a baseline bone density reading with which to

compare the March 2006 score, both experts admitted that they were

unable to determine the extent, if any, of bone mineral density

---

[4]It should be noted that Pharmacia & Upjohn has filed
motions in limine to exclude expert testimony from these doctors.
Defendant seeks to exclude Dr. Mahajan's testimony as an expert
witness and her notes that Depo Provera caused Plaintiff's
osteopenia because Plaintiff failed to disclose her as an expert
witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(A).
(Rec. Doc. 29).  In addition, Defendant has filed a *Daubert*
motion to exclude testimony from Dr. Terry based on the fact that
he is a neurologist who lacks qualification to render expert
opinion in this case.  (Rec. Doc. 24).  The Court has not ruled
on either motion.  According to the summary judgment (Rule 56(c))
standard, the Court should view evidence in a light most
favorable to the non-moving party.  *Fed. R. Civ. P. 56(c)*.  While
the Plaintiff here did move to bring the Motion for
Reconsideration, when analyzing the case on the merits, the
evidence here should be judged according to the summary judgment
standard, in which Plaintiff was the non-movant.  Thus, the Court
should consider these experts' testimony as admissible when
considering the merits of Plaintiff's case.

loss due to Depo-Provera use.  (Rec. Doc. 22); *see also Lorenzi,* 519 F. Supp. 2d at 752.

D. *Plaintiff's Compensable Injury*

Plaintiff has stated that she suffers from osteopenia, a bone density disorder diagnosed by the doctor that originally prescribed her Depo-Provera.  (Rec. Doc. 1).  Defendant contends that osteopenia is neither an injury, nor a disease.  (Rec. Doc. 22). Two federal courts have held that osteopenia is not "an injury in any legal sense." *See Colville*, 2008 WL 2721194, at *7; *Lorenzi*, 2007 WL 3125140, at *7.  The *Colville* case involved the same testimony from Dr. Mahajan as is currently before this Court in the present proceedings.  In *Colville*, and in the present case, Dr. Mahajan testified to the following concerning osteopenia: "Well, its an injury.  I would not call it an injury, but it is a slow process in the bone which leads to an injury." (Rec. Doc. 38).

As applied to the circumstances in question, Plaintiff has not suffered any compensable injury.  Her osteopenia is virtually identical to the problems suffered by the plaintiffs in *Colville* and *Lorenzi*.  Both of those courts held that osteopenia is not an injury for products liability purposes; this Court sees no reason to distinguish or disregard those findings. *See Colville*, 2008 WL 2721194, at *7; *Lorenzi*, 2007 WL 3125140, at *7.

*E. Conclusion*

In sum, Plaintiff has not set forth an issue of material fact that would warrant trial on the merits.  Thus, in addition to her inexcusable neglect in failing to file a timely Motion for Reconsideration, the Order granting Summary Judgment (Rec. Doc. No. 31) is maintained. The Court has reconsidered that Order, as noted above, but nothing new warrants its reversal.

New Orleans, Louisiana this 6th day of October, 2008.

_____

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

-21-